**SEYFARTH SHAW LLP**
Camille A. Olson (SBN 111919)
E-mail: colson@seyfarth.com
Richard B. Lapp (SBN 271052)
E-mail: rlapp@seyfarth.com
Christopher A. Crosman (SBN 190336)
Email: ccrosman@seyfarth.com
Elizabeth M. Levy (SBN 268926)
Email: elevy@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

**SEYFARTH SHAW LLP**
Duwayne A. Carr (SBN 299136)
Email: dacarr@seyfarth.com
333 South Hope Street, Suite 3900
Los Angeles, CA 90071
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Defendants
Atria Management Company, LLC and
Atria Senior Living, Inc.

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESTINY GALLEGOS, individually; and on behalf of other members of the general public similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ATRIA MANAGEMENT COMPANY, LLC, a Delaware limited liability company; ATRIA SENIOR LIVING, INC., a Delaware corporation and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. ___5:16-cv-888___ <br><br> **DEFENDANTS' ATRIA MANAGEMENT COMPANY, LLC AND ATRIA SENIOR LIVING, INC.'S NOTICE OF REMOVAL** <br><br> [*Concurrently filed with Civil Case Cover Sheet; Declarations of Elizabeth Levy and Phyllis Smith in support thereof; Defendants' Corporate Disclosures and Defendants' Certificate of Interested Parties*] <br><br> (San Bernardino Superior Court, Case No. CIVDS 1604505) <br><br> Complaint Filed:    March 25, 2016 |

NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Atria Management Company, LLC ("Atria Management") and Atria Senior Living , Inc. ("Atria Senior Living") (collectively, "Defendants") hereby remove the above-entitled action from the Superior Court of the State of California, County of San Bernardino, to the United States District Court for the Central District of California, asserting original jurisdiction under 28 U.S.C. section 1332(d)(2) (the Class Action Fairness Act of 2005) ("CAFA"), and (c), and removal jurisdiction under 28 U.S.C. sections 1441(a), 1446 and 1453.[1]  Defendants state that removal is proper for the following reasons:

## I.  PLEADINGS, PROCESSES AND ORDERS

1.    On **March 25, 2016**, Plaintiff Destiny Gallegos ("Plaintiff" or "Gallegos") filed an unverified Class Action Complaint in the Superior Court of California, County of San Bernardino, entitled: *Destiny Gallegos, individually, and on behalf of other members of the general public similarly situated, Plaintiff vs. Atria Management Company, LLC, a Delaware limited liability company; Atria Senior Living, Inc., a Delaware corporation; and Does 1 through 10, inclusive, Defendants*, Case Number CIVDS1604505 (the "Complaint").  A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2.    The Complaint purports to allege nine claims for relief.  Plaintiff rests her claims on alleged violations by Defendants of California Labor Code sections 510 and 1198 (overtime), 226.7 (meal and rest period violations), 226 and 1174(d) (non-compliant wage statements and failure to maintain records), 201 and 202 (timely payment of wages upon termination), 203 (waiting time penalties), 1182.12, 1194, 1197, 1197.1 and 1198 (minimum wages), and 2802 (employee reimbursement); and alleged violations of

---

[1] Atria Senior Living is an improper defendant in this action because Plaintiff and the individuals she seeks to represent were employed by Atria Management, not Atria Senior Living.  Nonetheless, Atria Senior Living has notice of this matter and joins in this Notice of Removal.

NOTICE OF REMOVAL

Business and Professions Code section 17200 *et seq.* (unfair competition and unlawful business practices).

3.    The Complaint seeks to certify a class of "All persons who worked for Defendants as a nonexempt, hourly-paid employee at any of Defendants' California facilities within four years prior to the filing of this complaint until the date of trial." (Ex. A, Compl. ¶ 16).

4.    On **March 31, 2016**, Atria Management was served with the Complaint. True and correct copies of the (1) Summons, (2) Civil Case Cover Sheet, and (3) Notice of Trial Setting Conference and Case Assignment are attached hereto as **Exhibit B**.

5.    On **March 31, 2016**, Atria Senior Living was served with the Complaint. True and correct copies of the (1) Summons, (2) Civil Case Cover Sheet, (3) ADR Packet, (4) Notice of Trial Setting Conference and Case Assignment are attached hereto as **Exhibit C**.

6.    On April 26, 2016, Defendants answered Plaintiff's unverified Complaint in the Superior Court of California, County of San Bernardino. A true and correct copy of Defendants' Answer is attached hereto as **Exhibit D**.

7.    **Exhibits A-D** constitute all pleadings, processes and orders served on, or filed by, Defendants in this action. (*See* Declaration of Elizabeth Levy ("Levy Decl."), at ¶ 3, Ex. 1).

## II.  TIMELINESS OF REMOVAL

8.    Plaintiff served the Summons and her unverified Complaint on March 31, 2016. This Notice of Removal is timely because it is being filed within thirty (30) days of the service upon Defendants of a copy of the Summons and Complaint, and within one (1) year of the commencement of this action. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353-56 (1999) (stating that thirty-day removal period begins when defendant is formally served).

### III. **JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")**

9.     This Court has original subject-matter jurisdiction over this action under CAFA, codified in relevant part at 28 U.S.C. section 1332(d)(2).  As set forth below, this action is properly removable pursuant to 28 U.S.C. section 1441(a) because the alleged amount in controversy exceeds $5,000,000, exclusive of interest and costs, and is a purported class action in which a class member is a citizen of a state different from that of Defendants (*see* 28 U.S.C. §§ 1332(d)(2) & (6)), and the number of putative class members is greater than 100.  *See* 28 U.S.C. §§ 1332 (d)(5)(B).

### 1.     **THERE IS MINIMAL DIVERSITY FOR REMOVAL UNDER CAFA**

10.     CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).  Here, such minimal diversity exists among the parties.  Plaintiff is a citizen of a state that is different from the state of citizenship of Defendants.

### A.     **Plaintiff is a Citizen of California**

11.     "To establish citizenship for diversity purposes, a [natural] person must be both (1) a citizen of the United States , and (2) be domiciled in [one] state." *Chamness v. Stonebridge Life Ins. Co.*, Case No. CV09-0780, 2009 WL 734137, at *1 (C.D. Cal. Mar. 18, 2009) (denying plaintiff's motion for remand because defendant's removal notice established complete diversity).  A person's domicile is the place where he or she resides with the intent to remain indefinitely.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.").  Citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)); *see also Zavala v. Deutsche Bank Trust Co. Americas*, No. C 13-1040 LB, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013)(where a plaintiff's

4
NOTICE OF REMOVAL

complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes.").

12.    Plaintiff alleges that she "is a resident of Fontana, California." (Ex. A, Compl. ¶ 4). Further, Defendants are informed and believe, and thereon allege, that Plaintiff's last known address is in the city of Fontana, California. (*See* Declaration of Phyllis Smith ("Smith Decl.") ¶ 15). Furthermore, Defendants' review of public records for Plaintiff verifies that she has continuously resided in California since at least July 2013. (Levy Decl. at ¶ 4, Ex. 1).

13.    Accordingly, Plaintiff is a citizen of the State of California.

**B.    Atria Management Is Not a Citizen of California**

14.    Limited liability companies are unincorporated associations for purposes of 28 U.S.C. section 1332. *Johnson v. Columbia Props. Anchorage*, LP, 437 F.3d 894, 899 (9th Cir. 2006) (holding that, "like a partnership, an LLC is a citizen of every state of which its owners/members are citizens").

15.    For purposes of diversity jurisdiction under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see also Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032 fn.13 (9th Cir. 2009) (A. Kleinfeld, concurring) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes. . . .").

16.    Thus, to determine jurisdiction under CAFA, limited liability companies, such as Atria Management, are treated the same as corporations in determining their citizenship.

17.    Pursuant to 28 U.S.C. section 1332(c)(1), "for purposes of this subsection and section 1453 [28 U.S.C. § 1453], [a] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

NOTICE OF REMOVAL

18.    Courts apply the "nerve center" test to determine a corporation's principal place of business for diversity purposes. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.*  Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based. *See Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters were located, where the corporate officers worked, and from where corporate policies and procedures were made).

19.    Atria Management is, and has been at all times since this action commenced, a limited liability company organized under the laws of the State of Delaware.  (*See* Smith Decl. at ¶ 3; *see also* Ex. A, Compl. ¶ 5) (acknowledging that Atria Management "is . . . a Delaware limited liability company").

20.    Further, Atria Management's principal place of business is, and has been at all times since this action commenced, located in the State of Kentucky.  (Smith Decl. at ¶ 3.)  Atria Management's corporate headquarters are located in Louisville, Kentucky, where its high level officers direct, control, and coordinate the company's activities.  (*Id.* at ¶ 5; *see also* Ex. A, Compl. ¶ 5) (acknowledging that Atria Management's "principal place of business [is] in Louisville, Kentucky").  Additionally, many of Atria Management's administrative functions, including corporate finance, payroll, and accounting, are directed from the Louisville, Kentucky office.  (Smith Decl. at ¶ 5).  Accordingly, Atria Management's principal place of business is Louisville, Kentucky under the "nerve center" test. *See Hertz Corp. supra*, 559 U.S. at 92-93.

21.    Therefore, for diversity of citizenship purposes, Atria Management is, and has been at all times since this action commenced, a citizen of the States of Delaware and Kentucky within the meaning of 28 U.S.C. section 1332(c)(1).

NOTICE OF REMOVAL

**C.     Atria Senior Living Is Not a Citizen of California**

22.     Plaintiff acknowledges that Atria Senior Living "is . . . a Delaware corporation . . . with its principal place of business in Louisville, Kentucky." (Ex. A, Compl. ¶ 6).

23.     Atria Senior Living is now, and was at the institution of this action, a citizen of a State other than California within the meaning of 28 U.S.C. section 1332(c)(1). Atria Senior Living is, and has been at all times since this action commenced, incorporated under the laws of the State of Delaware. (Smith Decl. at ¶4).

24.     Further, Atria Senior Living's principal place of business is, and has been since this action commenced, located in the State of Kentucky. (*Id.*) Under *Hertz Corp, supra*, 559 U.S. at 92-93, and *Davis, supra*, 557 F.3d at 1028, Atria Senior Living's principal place of business is Kentucky because its "nerve center" is located in that State. Specifically, Atria Senior Living's headquarters are located in Kentucky and the majority of its executive and administrative functions take place in Kentucky. (Smith Decl. at ¶ 5). Additionally, many of Atria Senior Living's administrative functions, including corporate finance, payroll, and accounting, are directed from the Louisville, Kentucky office. (*Id.*) Accordingly, Atria Senior Living's principal place of business is Louisville, Kentucky under the "nerve center" test.

25.     Therefore, for diversity of citizenship purposes, Atria Senior Living is, and has been at all times since this action commenced, a citizen of the States of Delaware and Kentucky within the meaning of 28 U.S.C. section 1332(c)(1).

**D.     Doe Defendants' Citizenship Must Be Disregarded**

26.     The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *see also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) ("[U]nknown defendants sued as "Does" need not join in a removal petition."). Thus, the existence of Doe Defendants 1 through 10, inclusive, does not deprive this Court of

NOTICE OF REMOVAL

jurisdiction. *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

27.     Accordingly, the minimal diversity requirement under CAFA exists as Plaintiff and Defendants are citizens of different states.

### E.     There Are More than 100 Putative Class Members

28.     CAFA requires that the aggregate number of members of proposed classes in a complaint be at least 100. *See* 28 U.S.C. § 1332(d)(5)(B).

29.     As noted earlier, Plaintiff defines the putative class as "All persons who worked for Defendants as a nonexempt, hourly-paid employee at any of Defendants' California facilities within four years prior to the filing of this complaint until the date of trial." (Ex. A, Compl. ¶ 16). Plaintiff estimates that the proposed class totals more than 100 individuals. (Ex. A, Compl. ¶20(a)).

30.     From March 25, 2012 to March 25, 2016, (the "putative class period"), there have been approximately 4,916 employees who fall within the putative class as defined by Plaintiff. (Smith Decl. at ¶ 8). Thus, the requisite number of at least 100 putative class members is satisfied here.

### F.     Plaintiff's Claims Place More Than $5,000,000 In Controversy

31.     While Defendants deny any liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs. All calculations are based on the putative class alleged in the Complaint, and in no way indicate that class treatment is appropriate in this case, or that Plaintiff has standing to represent such a class, or that the class proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. Defendants expressly reserve the right to challenge Plaintiff's claims, adequacy and standing to represent any class, class definitions, and calculation of damages in all respects.

32.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be

8

NOTICE OF REMOVAL

appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

33. To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must make a plausible claim that the amount in controversy exceeds that amount. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014).

34. Where, as here, Plaintiff does not plead a specific amount of damages, a defendant need only make a *prima facie* showing that it is "more likely than not" that the amount in controversy meets the jurisdictional minimum. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 404 (9th Cir. 1996) (stating that "[i]n cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence," that the amount meets the jurisdictional requirement).

35. Courts may assume a 100% violation rate in calculating the amount in controversy for removal purposes when a more precise calculation is not apparent on the face of the complaint. *See, e.g., Coleman v. Estes Express Lines, Inc.*, No. cv 10-2242 ABC (AJWx), 2010 U.S. Dist. LEXIS 79772 at *18-19 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true,

9

NOTICE OF REMOVAL

Defendants could properly calculate the amount in controversy based on a 100% violation rate"); *Muniz v. Pilot Travel Centers LLC*., No. S-07-0325, 2007 WL 1302504, * at 4 (E.D. Cal. May 1, 2007) ("Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought" to indicate a violation rate smaller than 100%).

36.     Moreover, a plaintiff cannot evade federal jurisdiction by alleging that the amount in controversy falls below the jurisdictional minimum. *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 978-82 (9th Cir. 2013).

37.     As set forth below, the amount in controversy implicated by the class-wide allegations easily exceeds $5,000,000.00. **All calculations supporting the amount in controversy are based solely on the Complaint's allegations, assuming without any admission, the truth of the facts alleged and that liability is established.   As set forth above, Defendants deny liability.**

### i.     Waiting Time Penalties Under Labor Code Section 203

38.     Plaintiff's sixth cause of action alleges that Defendants must pay waiting time penalties under Labor Code section 203 for failure to pay all wages owed upon termination.  (Ex. A, Compl. ¶¶ 88-92).  Labor Code section 203 authorizes penalties of one day of an employee's regular daily rate for each day an employer fails to pay wages due following termination for a maximum of 30 days.  *See* CAL. LAB. CODE § 203(a).

39.     The limitations period for potential claims under Labor Code section 203 is three years, which in this case, covers the period March 25, 2013 to March 25, 2016. During that period, there were approximately 2,927 putative class members whose employment with Atria Management ended.  (Smith Decl. at ¶ 11).  The average hourly rate for those employees was approximately $10.69.  (*Id.* at ¶ 12).  Assuming that the 2,927 former employees are owed 8 hours of pay per day for the maximum penalty of 30 days' wages, the alleged amount in controversy for just the claim for waiting time penalties would be **$7,509,511.20** [$2,565.60 ($10.69 x 8 hours x 30) x 2,927].

Accordingly, Plaintiff's claim for waiting time penalties alone exceeds the amount in controversy required under CAFA.

40.    As explained below, when also considering Plaintiff's claims for unpaid meal and rest period compensation, non-complaint wage statements, unpaid overtime, and unpaid minimum wage, the amount in controversy far exceeds the $5,000,000.00 threshold under 28 U.S.C section 1332(d)(2) for removal jurisdiction.

### ii.    Unpaid Meal and Rest Claims

41.    Plaintiff seeks recovery on her behalf and on behalf of the putative class for Atria Management's alleged failure to provide meal breaks and to authorize and permit rest breaks. (Ex. A, Compl ¶¶ 62-79).  The amount Plaintiff seeks on these claims is not apparent on the face of the Complaint.  However, pursuant to Labor Code section 226.7, the money owed for a meal period not provided or a rest break not authorized and permitted is one hour of pay for each violation.  *See* CAL. LAB. CODE § 226.7(c).

42.    As to these claims, Plaintiff seeks to certify a class covering the last four years.  The average hourly rate for non-exempt employees in California employed by Atria Management from March 25, 2012 to March 25, 2016 was $10.69.  (Smith Decl. at ¶ 9).  The approximate number of workweeks for non-exempt California employees for that same period was approximately 208,377.  (*Id.* at ¶ 10).  Assuming, conservatively, that each putative class member missed only one break per workweek, the putative class's missed break penalties from March 25, 2012 to March 25, 2016 would be approximately **$2,227,550.13** [$10.69/hour x 1 violation x 208,377 workweeks].

### iii.    Labor Code 226

43.    The Complaint also alleges that in violation of Labor Code section 226, "Defendants . . . systematically provided Plaintiff and class members with uniform, incomplete and inaccurate wage statements . . . that fail[ed] to correctly list [among others]: gross wages earned; net wages earned; and all applicable hourly rates in effect during the pay period . . . ." (Ex. A, Compl. ¶ 82).

11

NOTICE OF REMOVAL

44. Labor Code section 226(e) provides a minimum of $50 for the initial violation of as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee. *See* CAL. LAB. CODE § 226(e). The statute of limitations for recovery of penalties under Labor Code section 226 is one year, *see* CAL. CIV. PROC. CODE § 340(a), which in this case, covers the period of March 25, 2015 through March 25, 2016.

45. During that period, there were approximately 2,847 employees who worked for Atria Management for approximately 77,006 pay periods. (Smith Decl. at ¶¶13-14). Assuming a violation each pay period, penalties would total approximately **$3,850,300** (77,006 pay periods times $50 per violation).

### iv.     Unpaid Minimum Wage, Overtime Compensation & Reimbursement

46. Plaintiff alleges that she and the putative class members were required to undergo "mandatory drug testing and physical examination . . . [h]owever, Defendants did not compensate Plaintiff and class members for the time they spent traveling to and from drug testing or the time they spent undergoing drug testing." (Ex. A, Compl. ¶ 58). Plaintiff further alleges she and the putative class members "sometimes worked shifts of eight (8) hours a day or more or forty (40) hours a week or more . . . [but] were not paid overtime wages for all of the overtime hours they worked." (Ex. A, Compl. ¶ 54). Plaintiff further alleges that she and putative class members were not paid the regular rate for overtime hours worked. (Ex. A, Compl. ¶36).

47. Even without calculating the claimed amounts in controversy on these additional claims, based on the allegations in the Complaint, a conservative total estimated amount in controversy based solely on the above claims is **$13,587,361.30**—far in excess of the jurisdictional threshold under CAFA.

### v.     Attorneys' Fees

48. Plaintiff also seeks attorneys' fees. (Ex. A, Compl. at Prayer for Relief.) A reasonable estimate of fees likely to be recovered may be used in calculating the amount

NOTICE OF REMOVAL

in controversy. *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA."); *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *15 (E.D. Cal. Apr. 30, 2007) (attorneys' fees appropriately included in determining amount in controversy).

49.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *15-29 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6-7 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).

50.    Here, even under the conservative benchmark of 25 percent of the total recovery, attorneys' fees based on the amount in controversy established above could be as high as **$3,396,840.33**.

## IV.  ENTITLEMENT TO CAFA REMOVAL

51.    Because Plaintiff and Defendants are citizens of different States, there are more than 100 putative class members, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs, this Court has original jurisdiction of this

NOTICE OF REMOVAL

action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court.

52.    To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## V.  VENUE

53.    Venue lies in this Court pursuant to 28 U.S.C. sections 1441, 1446(a) and 84(a). This action was originally brought in the Superior Court of the State of California, County of San Bernardino. Further, as discussed above, Plaintiff is a citizen of California, residing in San Bernardino County. San Bernardino County falls within the jurisdiction of the United States District Court, Central District of California, Eastern Division.

## VI.  NOTICE OF REMOVAL

54.    Pursuant to 28 U.S.C. Section 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of San Bernardino.

55.    This Notice of Removal will be served on counsel for Plaintiff. A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

## VII.  PRAYER FOR REMOVAL

WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of San Bernardino to the United States District Court for the Central District of California.

14

NOTICE OF REMOVAL

DATED:   May 2, 2016

Respectfully submitted,

SEYFARTH SHAW LLP


By: *s/Elizabeth Levy*
Camille A. Olson
Richard B. Lapp
Christopher A. Crosman
Elizabeth M. Levy
Duwayne A. Carr
Attorneys for Defendants
Atria Management Company, LLC
Atria Senior Living, Inc.

15
NOTICE OF REMOVAL