UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 16-00888-JGB (SPx) | Date | August 4, 2016 |
| Title | *Destiny Gallegos v. Atria Management Company, LLC et al.* | | |

Present: The Honorable  JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff: | Attorney(s) Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) DENYING Plaintiff Destiny Gallegos's Motion to Remand (Doc. No. 22); and (2) VACATING the August 8, 2016 Hearing (IN CHAMBERS)

Before the Court is Plaintiff Destiny Gallegos's Motion to Remand ("Motion," Doc. No. 22). The Court finds this matter appropriate for resolution without a hearing. See Local Rule 7-15; Fed. R. Civ. P. 78. After considering the papers filed in support of and in opposition to the Motion, the Court DENIES the Motion to Remand. The August 8, 2016 hearing is VACATED.

## I.   BACKGROUND

On March 25, 2016, Plaintiff filed a putative class action Complaint in the California Superior Court for the County of San Bernardino against Defendants Atria Management Company, LLC ("Atria Management") and Atria Senior Living, Inc. ("Atria Senior Living") (collectively, "Defendants"). (Doc. No. 1-1.) Defendants are a privately-held for-profit senior housing company. (Id.) Plaintiff asserts nine wage-and-hour claims, including: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) non-compliant wage statements and failure to maintain accurate payroll records; (6) failure to pay wages upon termination; (7) unreimbursed business expenses; and (8) two claims for violation of the California Unfair Competition Law ("UCL"). (Id.) Plaintiff's claims arise from her employment by Defendants as a non-exempt server at their facility in San Dimas, California from June 2013 to November 2015. (Id. ¶ 4.) Plaintiff purports to represent a class encompassing all persons who worked for Defendants as a non-exempt

hourly employee at any of Defendants' California facilities from March 25, 2012 to the date of trial in this matter.  (Id. ¶¶ 14-20.)

On May 2, 2016, Defendants filed a Notice of Removal, basing removal jurisdiction on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (Not. of Removal, Doc. No. 1.)  Defendants calculated that the total amount in controversy for Plaintiff's claims exceeds $5,000,000, for purposes of removal jurisdiction under CAFA.  (Id. at 8-13.)  In support, Defendants filed the following documents:

- Declaration of Phyllis Smith ("Smith Decl." Doc. No. 5); and
- Declaration of Elizabeth Levy and an accompanying exhibit (Doc. No. 6).

On June 22, 2016, Plaintiff filed her Motion to Remand, disputing Defendants' calculation of the amount in controversy in this action.  (Doc. No. 22, 22-1.)

On July 1, 2016, Defendants filed an Opposition.  (Doc. No. 23.)  In support, Defendants filed the following documents:

- Supplemental Declaration of Phyllis Smith ("Supp. Smith Decl.," Doc. No. 24); and
- Request for Judicial Notice ("RJN") of four exhibits (Doc. No. 23-1).[1]

On July 11, 2016, Plaintiff filed a Reply.  (Doc. No. 25.)

## II.   LEGAL STANDARD

Generally, a state court action is only removable to federal court if it might have been brought there originally.  28 U.S.C. § 1441(a).  The party seeking removal bears the burden of proving its propriety.  Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 683–85 (9th Cir. 2006).

Federal courts have original jurisdiction under CAFA where the number of proposed plaintiffs is greater than 100, there is diversity of citizenship between any member of the class and any defendant, and the amount in controversy is more than $5,000,000, exclusive of interests and costs.  28 U.S.C. § 1332(d); Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015).  Though a notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, when the amount in controversy is contested, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the

---

[1]   In their Request for Judicial Notice, Defendants request that the Court take notice of various filings in a purportedly related state court action.  The Court GRANTS Defendants' request pursuant to Federal Rule of Evidence 201.  See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal citation omitted).

amount-in-controversy requirement has been satisfied." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 550 (2014) (analyzing jurisdiction in the context of when a defendant removes an action to federal court under CAFA). Once jurisdiction under CAFA is established by a preponderance of the evidence, it becomes the burden of the party challenging federal subject-matter jurisdiction to establish the applicability of any statutory exception to CAFA jurisdiction. See Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007). "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Ibarra, 775 F.3d at 1197.

A defendant contending the amount in controversy meets the jurisdictional minimum is not obligated to "research, state and prove the plaintiff's claims for damages." Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d. 1199, 1204-05 (E.D. Cal. 2003); see also Scherer v. Equitable Life Assurance Society of the United States, 347 F.3d 394, 397–99 (2nd Cir. 2003) (stating that the ultimate or provable amount of damages is not what is considered when determining the amount in controversy; rather, it is the amount put in controversy by the plaintiff's complaint). As long as a defendant's calculations are based on reasonable assumptions arising from a plaintiff's allegations, they are sufficient. See Ellis v. Pac. Bell Tel. Co., 2011 WL 499390, at *2 (C.D. Cal. Feb. 10, 2011) (when proving the amount in controversy, a defendant's calculations must be "good faith, reliable estimates based on the pleadings and other evidence in the record."). "A defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Ibarra, 775 F.3d at 1197.

### III. DISCUSSION

Plaintiff contends Defendants have not shown, by a preponderance of the evidence, that there is $5,000,000 in controversy. (Mot. at 4-13.) The Court reviews Defendants' evidence and then addresses the parties' contentions.

**A. Defendants' Evidence**

    **1. Notice of Removal**

In their Notice of Removal, Defendants argued the aggregate amount in controversy for Plaintiff's claims exceeds $5,000,000. (Not. of Removal ¶ 37.) In support, Defendants submitted a declaration by Atria Management's Director of Payroll Services Phyllis Smith. (Smith Decl. ¶ 2.) Smith avers she has "access to and control over the personnel records of current and former employees of Atria Management." (Id.) Smith claims these records reflect the following information. Smith states that between March 25, 2012 and March 25, 2016, Atria Management employed 4,916 non-exempt employees who worked 208,377 workweeks. (Id. ¶¶ 7-8, 10.) Smith calculates that the average hourly rate of Atria Management's employees in California during this period was $10.69. (Id. ¶ 9.) Smith also states that 2,927 employees were terminated between March 25, 2013 and March 25, 2016 and that the average hourly rate for non-exempt employees of Atria Management in California during this period was $10.69. (Id. ¶¶ 11-12.) Lastly, Smith claims that between March 25, 2015 and March 25, 2016, Atria

Management employed 2,847 employees in California who worked 77,006 workweeks. (Id. ¶¶ 13-14.)

Based on these figures, Defendants contended that the total amount in controversy for Plaintiff's claims at the time of removal is $13,587,361.30.[2] (Not. of Removal ¶ 47.) Specifically, Defendants calculate: (1) $7,509,511.20 in controversy as to Plaintiff's claim for failure to pay wages owed upon termination; (2) $2,227,550.13 in controversy as to Plaintiff's meal period and rest break claims; and (3) $3,850,300 in controversy as to Plaintiff's non-compliant wage statements and failure to maintain accurate payroll records. (Id. ¶¶ 39, 42, 45.)

In their Notice of Removal, Defendants calculated the amount in controversy as to Plaintiff's claim for failure to provide meal periods and failure to provide rest periods (i.e. violations of California Labor Code section 226.7) as follows.[3] (Id. ¶ 42.) Defendants noted that Atria Management's employees from March 25, 2012 to March 25, 2016 worked a total of 208,377 workweeks and earned an average hourly rate of $10.69. (Id.) Assuming each putative class member during this period only missed one break per workweek, Defendants calculated that the amount in controversy for Plaintiff's meal and rest period claims is $2,227,550.13. (Id.)

### 2.     Opposition to Motion to Remand

In their Opposition to Plaintiff's Motion, Defendants offer a different calculation of the amount in controversy as to Plaintiff's meal period and rest period claims. Defendants submit a supplemental declaration from Smith clarifying that her original declaration's estimate of the total number of individuals employed by Atria Management in California from March 25, 2012 to March 25, 2016 only included individuals hired on or after March 25, 2012. (Supp. Smith Decl. ¶ 5.) Smith estimates that Atria Management employed 6,639 non-exempt employees in California between March 25, 2012 and April 15, 2016, including individuals hired prior to March 25, 2012. (Id.) The 6,639 employees worked a total of 435,956 workweeks from March 25, 2012 to April 15, 2016 and earned an average hourly rate of $10.69 during this period. (Id.) The employees during this period worked 1,646,141 shifts and 1,448,303 (i.e. 87.9%) of these shifts exceeded five hours. (Id. ¶ 11.)

Citing Smith's supplemental declaration, Defendants calculate that the amount in controversy as to Plaintiff's meal period and rest period claims together total $7,822,990.64. To reach this figure, Defendants assume Plaintiff and the putative class members suffered one rest period violation for each of the 435,956 workweeks they worked from March 25, 2012 to April 15, 2016. (Opp. at 9.) Defendants also assume Plaintiff and the putative class members suffered

---

[2]     Defendants also estimate Plaintiff will incur attorney's fees equivalent to 25 percent of the total recovery on her claims, totaling $3,396,840.33. (Not. of Removal ¶ 50.)

[3]     California Labor Code section 226.7 provides that an employer who fails to provide an employee with a legally required meal or rest period must pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided. Cal. Lab. Code § 226.7(c).

one meal period violation for 87.9% of the 435,956 workweeks they worked between March 25, 2012 and April 15, 2016.[4]  (Id. at 10.)  Defendants assume each of the putative class members earned Plaintiff's hourly wage of $9.55.[5]  (Id.)

**B.     The Parties' Contentions**

Plaintiff generally argues Defendants' calculations of the amount in controversy as to her claims for failure to pay wages owed upon termination, meal and rest period violations, and non-compliant wage statements are all speculative and based on unsupported assumptions.  (Mot. at 4-13.)  Defendants respond that each of its calculations are based on reasonable assumptions from the allegations in the Complaint.  (Opp. at 6-16.)

**C.     Analysis**

As set forth below, the Court finds the calculations contained in Defendants' Opposition of the amount in controversy regarding Plaintiff's meal period and rest period claims are based on reasonable assumptions.  See Pac. Bell Tel. Co., 2011 WL 499390, at *2.  Because Defendants' estimate as to these claims exceeds the $5 million statutory minimum for CAFA jurisdiction, the Court does not address the propriety of Defendants' calculations regarding Plaintiff's remaining claims.

---

[4]     In her Motion to Remand, Plaintiff argues Defendants' original estimate of the amount in controversy in their Notice of Removal was inaccurate because there was no information provided as to whether the total shifts worked by each employee were "long enough to qualify for meal or rest breaks" under California law.  (Mot. at 8.)  In their revised calculations of the amount in controversy as to Plaintiff's meal period claims, Defendants only take into account violations for 87.9% of the employees' total shifts because Smith's supplemental declaration avers that only 87.9% of all shifts worked by employees during this period exceeded five hours.  In any case, the Court finds Defendants are not obligated to identify which shifts were of sufficient duration to warrant meal and rest breaks when presenting calculations of the amount in controversy.  See Bryan v. Wal-Mart Stores, Inc., No. C 08-5221-SI, 2009 WL 440485, at *3 (N.D. Cal. Feb. 23, 2009) (party opposing remand need not "conduct a fact-specific inquiry into whether the rights of each and every potential class member were violated" or "try the case themselves for purposes of establishing jurisdiction").

[5]     Plaintiff faults Defendants for assuming in their Notice of Removal that each putative class member earned an hourly rate of $10.69 given that the Complaint alleges Plaintiff earned only $9.55 an hour.  (Id. at 7 (citing Compl. ¶ 4).)  However, courts routinely assume members of a putative class earned the average hourly rate when calculating the amount in controversy on wage-and-hour claims.  See Tajonar v. Echosphere, LLC, No. CV 14-2732 LAB, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015); Mejia v. DHL Express (USA), Inc., No. CV 15-890-GHK (JCX), 2015 WL 2452755, at *6 (C.D. Cal. May 21, 2015).  In any case, Defendants' calculation in their Opposition assumes each putative class member earned Plaintiff's hourly rate.

The Court finds Defendants' calculations of the amount in controversy as to Plaintiff's meal and rest period claims to be grounded in reasonable assumptions from the Complaint. In the Complaint, Plaintiff alleges Defendants "engaged in a systematic, company-wide policy to not pay meal period premiums for Plaintiff and class members" and "implemented a company-wide policy to not pay rest period premiums owed." (Id. ¶¶ 69, 77.) Given the breadth of these allegations, it is reasonable for Defendants to assume each putative class member suffered one meal period and one rest period violation per workweek from March 25, 2012 to April 15, 2016.[6] In fact, this assumption is conservative, especially when compared to other district court decisions where similar allegations led courts to find even higher violation rates. See Mejia v. DHL Express (USA), Inc., No. CV 15-890-GHK (JCX), 2015 WL 2452755, at *3–4 (C.D. Cal. May 21, 2015) (assuming one rest period violation per workday from allegations suggesting uniform violations). Moreover, Plaintiff fails to suggest any different rate of violation or submit evidence indicating a different rate of violation. See Unutoa v. Interstate Hotels and Resorts, Inc., No. CV 14-09809–SVW (PJW), 2015 WL 898512 at *3 (C.D. Cal. March 3, 2015) (denying motion to remand, noting "Plaintiff fails to assert any different rate of violation or submit evidence indicating a contrary rate . . . ."); see also Lopez v. Aerotek, Inc., No. SACV 14-803-CJG, 2015 WL 2342558, at *3 (S.D. Cal. May 21, 2015) (denying motion to remand, noting "although afforded the opportunity to do so on this motion, Plaintiff does not assert or suggest an alternative violation rate on which the Court should rely").

Hence, the Court finds Defendants' calculations as to Plaintiff's meal period and rest period claims are supported by reasonable assumptions from the Complaint and establish by a preponderance of the evidence that the amount of controversy in this action exceeds $5 million. See Ibarra, 775 F.3d at 1197. Accordingly, the Court DENIES Plaintiff's Motion to Remand.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Remand (Doc. No. 22).

The August 8, 2016 hearing is VACATED.

**IT IS SO ORDERED.**

---

[6]    Plaintiff relies heavily on Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th Cir. 2013). However, the Court is unpersuaded by Plaintiff's attempt to analogize to Garibay. First, Garibay is unpublished and thus merely persuasive authority. Second, the brief memorandum opinion does not discuss the Plaintiff's allegations in the complaint; here, Defendants justifiably based their calculations on the broad allegations in the Complaine.